Michelle M. WEGSCHEID, et al., Plaintiffs–Appellants,

v.

LOCAL UNION 2911, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Defendants–Appellees.

No. 95–3385.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1997.

Decided June 26, 1997.

William T. Hopkins, Eric H.J. Stahlhut, Gallucci, Hopkins & Theisen, Fort Wayne, IN, John C. Scully (argued), National Right To Work Legal Defense Foundation, Springfield, VA, for Plaintiffs–Appellants.

Barry A. Macey, Macey, Macey & Swanson, Indianapolis, IN, Michael Nicholson (argued), International Union, UAW, Detroit, MI, for Defendants–Appellees International Union, United Auto, Aerospace and Agricultural Implement Workers of America, Local 2911.

Michael A. Warner, Jr., David P. Radelet, Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Defendant–Appellee Navistar International Transportation Corporation.

Before POSNER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

POSNER, Chief Judge.

Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), forbids an employer to discriminate in terms and conditions of employment in order to encourage or discourage union membership. But the employer may agree in a collective bargaining agreement to make it a condition of continued employment that all the employees in the bargaining unit join the union (that is, may include in the agreement a "union shop" clause), provided that membership is not denied for any reason other than the employee's failure "to tender the ... dues ... uniformly required as a condition of acquiring or retaining membership." The courts have interpreted this proviso as entitling an employee to retain his employment, notwithstanding his refusal to join the union or pay the full dues that members are required to pay, as long as he pays so much of the dues as represent the cost to the union of carrying out its responsibilities with respect to negotiating the collective bargaining agreement and enforcing its terms. *Communications Workers v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988); *Nielsen v. International Ass'n of Machinists & Aerospace Workers*, 94 F.3d 1107, 1111 (7th Cir. 1996); *Miller v. Air Line Pilots Ass'n*, 108 F.3d 1415, 1420 (D.C.Cir.1997). This is the "agency fee," the part of the dues that compensates the union for its services as the exclusive bargaining representative of the employees in the bargaining unit. Were they not required to pay this fee, workers could take a free ride on the union's statutorily required efforts on behalf of all the workers in the unit, including the refusers, to press for higher wages or fringe benefits or better working conditions and to represent workers having grievances against the employer. *Communications Workers v. Beck, supra,* 487 U.S at 753–54, 108 S.Ct. at 2653. In the limit, no workers would join the union, which would therefore have no income out of which to defray the expense of performing its duties as bargaining representative.

The interpretation of section 8(a)(3) that allows the substitution of the agency fee for union membership and full dues does considerable violence to the "plain meaning" of the section, and this violence is at the heart of this appeal. The usual justification offered for this result is that the union would violate its implied duty of fair representation of all members of the bargaining unit (implied in section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), which permits a collective bargaining agreement to make the union the exclusive representative of the

workers in the unit, see *Breininger v. Sheet Metal Workers,* 493 U.S. 67, 86–87, 110 S.Ct. 424, 436–37, 107 L.Ed.2d 388 (1989)) if it forced some of them to support activities unrelated to that representation. E.g., *Communications Workers v. Beck, supra,* 487 U.S. at 743–44, 108 S.Ct. at 2647–48. But lurking underneath may be a concern with a potential violation of the First Amendment if the union-shop provision is interpreted to allow a union to use the power over nonunion workers that the statute gives it to force them to identify with and support an organization whose political activities may be abhorrent to them. It is true that a union is not a state actor and that the National Labor Relations Act allows states to forbid union-shop clauses in collective bargaining agreements, 29 U.S.C. § 164(b) ("right to work" provision), but when a state does not forbid the union shop the Act empowers the union to coerce the members of the bargaining unit.

However all this may be (we left open the question whether union-shop clauses in collective bargaining agreements with private employers are governmental action in *Nielsen v. International Ass'n of Machinists & Aerospace Workers, supra,* 94 F.3d at 1113, as had the Supreme Court in *Beck,* 487 U.S. at 761–62, 108 S.Ct. at 2656–57), unions are not happy about having to discount the regular union dues for those workers who prefer not to be union members. The discounts are substantial, because political and other activities not directly related to collective bargaining agency consume a substantial fraction of unions' resources—in this case, where the agency fee is only 76.4 percent of the full dues, almost a quarter. The suit, by four employees of Navistar International Transportation Corporation in Fort Wayne, Indiana who are covered by a collective bargaining agreement between Navistar and a local of the auto workers' union but do not want to belong to the union, charges the company and the union with violating the plaintiffs' right to pay no more than the agency fee. The complaint is based on section 301 of the Taft–Hartley Act, 29 U.S.C. § 185(a), insofar as it names the company as a defendant, and on section 9(a) of the National Labor Relations Act, the source of the

implied right to sue a union in federal district court for breach of the duty of fair representation, insofar as it names the union (and its parent, but we can ignore that detail) as another defendant.

One count of the complaint challenges the "union security" (that is, union-shop) clause of the collective bargaining agreement. This clause is a close paraphrase of the language that we quoted earlier from section 8(a)(3) of the National Labor Relations Act. Hence it does not advise the employees of their right (announced in *Beck*) not to join the union and instead to pay only an agency fee, since that right is a judicial gloss on section 8(a)(3) rather than a part of the actual language of the statute. The other count of the complaint challenges statements to the plaintiffs by officers of the local to the effect that the plaintiffs would have to join the union and pay the full union dues in order to keep their jobs. That count was dismissed with prejudice by agreement of the parties after the union agreed to refund the union dues that the plaintiffs had paid and to notify all the employees in the bargaining unit of their right to pay the agency fee in lieu of joining the union and paying the full dues. That left only the challenge to the language in the collective bargaining agreement. The district judge dismissed Navistar because the complaint alleged no breach of the collective bargaining agreement and hence stated no claim under section 301, and then granted the union's motion to dismiss what was left of the suit on the ground that the collective bargaining agreement did not violate section 8(a)(3). Although it is not important to the ultimate disposition of the appeal, we note that Navistar should not have been dismissed from the case, since the plaintiffs were asking the court to order a change in a contract to which Navistar is a party. Fed.R.Civ.P. 19(a)(1); *United States ex rel. Hall v. Tribal Development Corp.,* 100 F.3d 476, 479 (7th Cir.1996); *Kulawy v. United States,* 917 F.2d 729, 736 (2d Cir.1990).

The parties agree, though perhaps mistakenly or unnecessarily, as we shall see, that the issue presented by the appeal is the "facial validity" of the union-shop clause. The union argues that the National Labor

Relations Board has exclusive jurisdiction over such a challenge, and so urges us to dismiss the case without reaching the merits. Invoking the general rule that the Board has exclusive jurisdiction over claims involving conduct subject (or even just arguably subject) to section 8 of the Act, e.g., *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 284, 91 S.Ct. 1909, 1916–17, 29 L.Ed.2d 473 (1971), the union argues that the only ways in which a federal district court rather than the Board can consider a violation of section 8 are if a suit is brought under section 301 of the Taft-Hartley Act claiming a violation of the collective bargaining agreement and the union is joined as a defendant because it has failed in its duty of fair representation of all the members of the bargaining unit, or if, though there is no claim that the company violated the agreement, the union has failed in its duty of fair representation by not administering the agreement fairly. Either way, if the union defends by invoking section 8(a)(3), the court can interpret that section. *Communications Workers v. Beck, supra,* 487 U.S. at 743, 108 S.Ct. at 2647–48; *Nielsen v. International Ass'n of Machinists & Aerospace Workers, supra,* 94 F.3d at 1111.

■■■ But there is no basis for limiting federal judicial jurisdiction, in cases in which the company is not culpable, to union violations of the duty of fair representation committed in the course of administering the agreement. The district court can adjudicate a claimed violation of section 8(a)(3) whenever a case over which it has jurisdiction is before it, and it is now settled that any suit to enforce a union's duty of fair representation is within the federal-question jurisdiction of the federal courts; the plaintiff need not have a claim against the employer (over which jurisdiction would ordinarily be conferred by section 301 of the Taft–Hartley Act). *Breininger v. Sheet Metal Workers, supra,* 493 U.S. at 83–84, 110 S.Ct. at 434–35. The district court would not have jurisdiction over a claimed violation of section 8(a)(3) that was not conjoined with a claimed violation of the union's duty of fair representation, or some other basis of federal jurisdiction, *Communications Workers v. Beck, supra,* 487 U.S. at 742, 108 S.Ct. at 2647, whatever exactly such a claim might be (since the only way that a union can violate section 8(a)(3) is by insisting on full union dues or formal union membership). But that is not a problem here, and since it is not a problem, we do not see any basis for the limitation that the union seeks to place on the district court's jurisdiction.

Moreover, since the union doesn't question the district court's jurisdiction over the other count of the complaint, the count complaining about statements made by the union's officers to the plaintiffs, the implication of the union's position is that to challenge both those statements and the language of the union-shop clause the plaintiffs were required to proceed in two forums—the district court and the Labor Board—or else surrender their judicial claim and proceed exclusively before the Board. They could have proceeded before the Board on both claims by recharacterizing the union officers' statements as unfair labor practices, *Breininger v. Sheet Metal Workers, supra,* 493 U.S. at 73–74, 110 S.Ct. at 429–30; *Bloom v. NLRB,* 30 F.3d 1001, 1002 (8th Cir.1994), but they did not have to proceed so. If an alleged violation of section 8(a)(3) is litigable in a district court suit challenging statements made outside the collective bargaining agreement as a breach of the union's duty of fair representation, and it is, we cannot think of any reason why it should not be litigable if the statements happen to be contained in the collective bargaining agreement, since the union's duty of fair representation can be violated by union conduct in the negotiation of a collective bargaining agreement, e.g., *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 77, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991); *Communications Workers v. Beck, supra,* 487 U.S. at 743, 108 S.Ct. at 2647–48; *Breininger v. Sheet Metal Workers, supra,* 493 U.S. at 80–81, 110 S.Ct. at 432–33; *Steele v. Louisville & Nashville R.R.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), as well as in the enforcement of it.

Even if we had a doubt about the district court's jurisdiction to entertain a challenge to a union's misrepresentations in a collective bargaining agreement—and we do not—it

would be easily sidestepped by redescribing the appeal as a challenge to the adequacy of the relief that the plaintiffs obtained in the district court by the settlement of the other count in their complaint. *Why* the plaintiffs divided their complaint into separate counts, one challenging the "facial validity" of the union-shop clause and the other the "enforcement" of the provision, eludes us. Their case is very simple: it is that the union misled them about their right to substitute the agency fee for union membership and full dues by the language of the union-shop clause and by statements made in person by union officers. Rather than coupling settlement of the second count ("enforcement") with an appeal from the dismissal of the first, the plaintiffs should have insisted that full relief required changing the language of the collective bargaining agreement, and if the district judge disagreed they could have appealed as they have done and brought before us the question of just how complete the relief must be to protect them.

On this, the realistic view of the appeal, the only issue is the likely effect of the misleading language of the collective bargaining agreement on these plaintiffs. Misleading it is. True, it is a close and accurate paraphrase of the statute, read literally; but as we noted at the outset the Supreme Court has glossed the statute to change its literal meaning, indeed virtually to invert it. Read literally, section 8(a)(3) authorizes the collective bargaining agreement to compel all the employees in the bargaining unit to join the union and pay the full union dues. As construed judicially, it authorizes no such thing; all that the collective bargaining agreement can require is the payment of the agency fee. This has been settled law for some time, and the only realistic explanation for the retention of the statutory language in collective bargaining agreements, as the courts have observed, is to mislead employees about their right not to join the union. *Bloom v. NLRB, supra,* 30 F.3d at 1004–05; *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers v. NLRB,* 41 F.3d 1532, 1537 (D.C.Cir.1994). But this is not a representative suit. Therefore the only issue is the impact of the defendants' actions or words, including the words in the collec-

tive bargaining agreement, on these plaintiffs. If they were not misled, the fact that the union insists on retaining misleading statutory language in its collective bargaining agreements in order to mislead employees, and that some employees may actually be misled by the language, is irrelevant. The plaintiffs make no argument that they themselves are being misled by it. Having settled a part of the case for relief that includes emphatic assurances by the union to these employees that they don't have to join the union or pay anything more than the agency fee exactly calculated at 76.4 percent of the full union dues, the plaintiffs would have a hard time persuading anyone that the collective bargaining agreement should be changed in order to protect them (them, we emphasize, not others, who are not before the court).

We go further: the settlement has made the case moot. Not because the plaintiffs *could not* complain that complete relief required a change in the collective bargaining agreement—although, as we just said, it might be difficult for them to urge such a complaint with a straight face in light of the provisions of the settlement agreement—but because they *do not* complain that complete relief requires this. Pressed at argument, their lawyer acknowledged that eliminating the objectionable language in the collective bargaining agreement would not benefit his clients, although it might benefit other employees. He rightly described the issue presented by the appeal, the "facial validity" of the union-shop clause, as "abstract." He defined that issue, confirming its abstract character, as whether the union has a right to lie to the members of the bargaining unit. It does not; but a suit cannot be maintained in a court created under Article III of the Constitution, however egregious the defendant's conduct, unless the decision would affect the tangible interests of the suitor. A decision of this appeal, given that the suitors have obtained all the relief that *they* need to protect themselves against being misled, could not have such an effect.

The plaintiffs conceivably might have argued, but did not, that the collective bargaining agreement, with its union-shop clause in its present form, constitutes a public *representation* that these plaintiffs, since they are

employed under the agreement, are members of the union. If union-shop clauses are governmental action, this representation might conceivably be considered a compelled ideological association violating First Amendment principles stretching back to the second flag-salute case. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); see also *Abood v. Detroit Board of Education*, 431 U.S. 209, 233–34, 97 S.Ct. 1782, 1798–99, 52 L.Ed.2d 261 (1977); *Wooley v. Maynard*, 430 U.S. 705, 713, 97 S.Ct. 1428, 1434–35, 51 L.Ed.2d 752 (1977). We need not decide whether such an argument would prevail; we mention it merely to make clear that it was not made in this case and so is not available to demonstrate that the parties have a live dispute despite the settlement of the "enforcement" branch of the case.

Although employees cannot complain about language in a collective bargaining agreement that however misleading does not mislead them, just as investors cannot complain under the securities laws about misrepresentations that did not mislead them, we emphasize that nothing we have said has been intended to suggest that unions and employers have a privilege to incorporate the language of section 8(a)(3) of the NLRA into their collective bargaining agreements if the consequence is to mislead the employees. This language does not mean what it says, and if its inclusion without appropriate qualification misleads employees, either by itself or in conjunction with other misleading representations, the union cannot hide behind the fact that it is, after all, the words of Congress that it is repeating.

The case became moot when the settlement of the count complaining about the union officers' statements gave the plaintiffs all the relief they sought, leaving them with only an abstract quarrel with the harmless— harmless to them, at any rate—language of the collective bargaining agreement. The judgment of the district court is therefore vacated and the case remanded with instructions to dismiss it as moot.