In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1209

PETER DAZA,

*Plaintiff-Appellant,*

*v.*

STATE OF INDIANA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-02951-JMS-MPB—**Jane Magnus-Stinson**, *Judge.*

ARGUED DECEMBER 4, 2020 — DECIDED JUNE 23, 2021

Before KANNE, WOOD, and SCUDDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Peter Daza once worked for the Indiana Department of Transportation (INDOT), but he was fired in 2015. Believing that the agency took that step for discriminatory and retaliatory reasons, he sued it in 2017. The district court granted summary judgment for the defendants, however, and we affirmed its decision. See *Daza v. Indiana*, 941 F.3d 303 (7th Cir. 2019) (*Daza I*). That should have been the

end of things, but it was not. Days after the district court dismissed his first action, he filed the present case, which is identical except for the addition of a failure-to-rehire allegation. The district court dismissed the new action on claim-preclusion grounds, and we affirm.

**I**

Daza worked as a geologist for INDOT from 1993 until the agency fired him on December 10, 2015. We described his job in *Daza I*, 941 F.3d at 305–08, but those details are not pertinent this time around. What matters is that Daza was convinced that his firing was politically and racially motivated, and so in 2017 he sued INDOT and several of its officials. Invoking 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, he alleged that INDOT and its officials had discriminated against him based on race, color, age, and political speech and had retaliated against complaints he made regarding the alleged discrimination. (We refer to the defendants collectively as INDOT.) Daza's primary theory in the 2017 case involved the loss of his job.

Just 26 days after the district court granted summary judgment in favor of the defendants in the 2017 case, Daza filed a second action on September 25, 2018. That suit, which we will call *Daza II*, is the one currently before us. In it, Daza again alleges discrimination and retaliation based on race, color, age, and political speech. He also contends that INDOT's failure to rehire him for the vacancy left after INDOT dismissed him was an independent act of discrimination and retaliation, because INDOT filled his position with a young and inexperienced white man.

Although the claim in *Daza I* concerned Daza's firing, he did not limit himself to that event in his response to INDOT's Motion for Summary Judgment in that case. Relevant to this appeal, Daza expressly contended in *Daza I* that INDOT's failure to rehire him and its decision to hire an unqualified replacement proved that INDOT was attempting to cover up its discrimination and retaliation against him.

Based on its decision in *Daza I*, which we had affirmed on October 24, 2019, the district court granted summary judgment in favor of INDOT in *Daza II* on January 10, 2020. Its primary reason was that claim preclusion barred the second case. In the alternative, the court found that summary judgment was proper on the merits because Daza did not present a cognizable failure-to-rehire claim. We agree that claim preclusion blocks the second case, and so on that basis we affirm.

**II**

The doctrine of claim preclusion rests on the pragmatic insight that one fair opportunity to litigate a claim is normally enough. The logjam that would develop if people could take second, third, or nth bites at the apple without restriction would end up greatly delaying, or even denying, access to the courts for people with new claims. By requiring people to raise all theories that relate to a single claim in one proceeding, dispute resolution is accomplished efficiently, people focus their efforts on the main event, and to the extent humanly possible, both factfinding and legal analysis are accurate. Those incentives and consequences are preserved by the claim-preclusion doctrine, under which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S.

147, 153 (1979) (citing *Cromwell v. County of Sac,* 94 U.S. 351, 352 (1877)).

Federal courts apply the federal common law of claim preclusion when the earlier decision was rendered by a federal court. See *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). (When a state court issues the earlier judgment, the full faith and credit statute, 28 U.S.C. § 1738, governs the scope of preclusion. See *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985).) Daza's first case was adjudicated in federal court, and so the preclusion rules now applicable are also federal. Claim preclusion is appropriate when three criteria are met: (1) identity of parties, (2) identity of claims, and (3) a prior final judgment on the merits. See generally *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594–95 (2020); see also *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. 2000).

In interpreting the scope of a claim for purposes of preclusion, we are not limited to the words in the complaint; we instead are examining the complaint to discern the basis of the litigation. As the Supreme Court put it in *Lucky Brand*, we must decide if the two claims "arise from the same transaction … or involve a common nucleus of operative facts." 140 S. Ct. at 1595 (cleaned up). Anything falling within that common nucleus, whether or not actually raised, falls within the scope of the claim and is thus subject to claim preclusion in a later case. In this respect, claim preclusion differs from its cousin, issue preclusion. Issue preclusion applies only if the issue was actually litigated and was necessary to the outcome of the proceeding.

Daza does not dispute that his first lawsuit (*Daza I*) involved the same parties and was resolved by a final judgment

on the merits. But he contends that the new litigation does not fall within the scope of the claim adjudicated the first time around. He failed to persuade the district court that this was so, however. That court concluded that Daza did raise his failure-to-rehire claim in *Daza I* and, in any event, that claim falls within the scope of the first claim. It pointed out that Daza used INDOT's decision to pass over him in favor of the younger replacement as evidence of discrimination and retaliation, and that it explicitly addressed that point.

In the alternative, the court added that even if the failure-to-rehire theory did not appear in so many words in the pleadings, it fit within "the bigger picture of INDOT terminating him and refusing to take him back." In so holding, it relied on *Barr v. Board of Trustees of Western Illinois University*, 796 F.3d 837 (7th Cir. 2015), which held that "a discrimination claimant who is waiting for a right-to-sue letter on new claims that are factually linked to an earlier suit" is not allowed to split his claims, *id.* at 840. He must instead ask the first court to stay its proceedings until the new right-to-sue letter appears.

We have little to add to the district court's reasoning. Daza is undeniably right that he did not explicitly raise a failure-to-rehire theory in his complaint, but that is just the beginning of our analysis. In response to INDOT's motion for summary judgment, Daza brought up his argument that INDOT discriminated and retaliated against him by failing to rehire him for the position he had vacated and choosing a less experienced replacement. See *Daza v. State*, 331 F. Supp. 3d 810, 849–50 (S.D. Ind. 2018) ("Mr. Daza argues that Defendants retaliated against him for filing the EEOC Charge *by failing to rehire him and instead trying to hire another individual*.") (emphasis

added). The problem with Daza's argument, the district court found, was that he presented no "evidence that he even re-applied for his position and was rejected and, even if he had, [there was no] evidence that his EEOC Charge factored into a decision not to re-hire him." *Id*. at 850. Although this was at the summary-judgment stage, the principles underlying trial by consent apply here. See Federal Rule of Civil Procedure 15(b)(2). Both parties engaged in this argument, and that, along with the obvious connection between a complaint about being fired and a complaint that one was not re-instated to the same position, is enough to show that it was part of the earlier litigation.

Daza resists these conclusions with a barrage of arguments, but we find none of them persuasive. Daza complains that he was not able to obtain all the discovery materials he needed in *Daza I*, and that the court did not fully resolve the failure-to-rehire argument. But the court sensibly found that no more discovery was warranted. Nothing Daza sought would have overcome the fact that he "presented [no] evidence that he even re-applied for his position and was rejected." The court accordingly granted summary judgment and denied Daza's motion to compel additional discovery as moot. After that, it entered final judgment on the merits. At that point, the sufficiency of INDOT's responses to Daza's arguments was beside the point: the district court was finished with the case, thereby allowing this appeal.

Finally, Daza points out that earlier lawsuits cannot preclude litigation over subsequent events. True enough, but that proposition has no bearing on his case. In *Lucky Brand*, the Supreme Court reiterated the well-understood principle that claim preclusion does not prevent parties from bringing a suit

involving actions that "occurred after the conclusion" of the previous suit. 140 S. Ct. at 1596. Here, however, Daza's claim for failure to rehire involved events that existed at the time of *Daza I*. Indeed, this is precisely why he was able to raise that argument in opposition to summary judgment. That he was awaiting a right-to-sue letter from the EEOC is of no consequence, because "the requirement to exhaust administrative remedies is no excuse for claim-splitting in this context." *Barr*, 796 F.3d at 840.

## III

This is Daza's second stab at raising the claim that INDOT discriminated and retaliated against him in connection with his job there, both before and after his firing. He lost in *Daza I*, however, and so the district court properly recognized that claim preclusion bars the present action. We therefore AFFIRM the judgment.